**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **BETHZAIDA RAMOS-ORTIZ** | |
| PLAINTIFF | CIVIL NO. 16-2366 |
| VS. | |
| **COMMONWEALTH OF PUERTO RICO;** **DEPARTMENT OF LABOR & HUMAN RESOURCES OF THE COMMONWEALTH OF PUERTO RICO;** | RETALIATION, DISCRIMINATION BASED ON DISABILITY, AND TORT DAMAGES |
| **VANCE H. THOMAS-RIDER, in his personal capacity and official capacity as Secretary of the Department of Labor;** | TRIAL BY JURY DEMANDED |
| **MYRIAM LYMARIS COSTA-MALARET, in her personal capacity and official capacity as Director of the Anti-Discrimination Unit of the Department of Labor;** | |
| **NILMA MALDONADO-COLON, in her personal capacity and official capacity as Director of Human Resources of the Department of Labor;** | |
| **INSURANCE COMPANY XYZ;** **COMPANY ABC;** **JOHN & JANE DOE.** | |
| DEFENDANTS | |

**COMPLAINT**

**TO THE HONORABLE COURT:**

      **COMES NOW, Bethzaida Ramos-Ortiz,** (hereinafter referred as "Plaintiff"), through

the undersigned attorney and very respectfully states, alleges and prays as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff works for the Anti-Discrimination Unit of the Department of Labor & Human Resources of the Commonwealth of Puerto Rico (hereinafter referred as "DOLPR" and/or "Employer") since 1989. Since February of 2013, the Plaintiff has assumed the role as the main caregiver of her severely mentally impaired brother, Mr. Manuel Ramos-Ortiz (hereinafter referred as "Plaintiff's disabled relative" and/or "Plaintiff's Brother"). After the Plaintiff assumed the role of the caregiver, she requested reasonable accommodations from her employer with regards to her work schedule, in order for her to be able to adequately assist the Plaintiff's Brother. Immediately after requesting said reasonable accommodations, her immediate supervisor, Mrs. Myriam Lymaris Costa-Malaret, Director of the Anti-Discrimination Unit of the DOLPR (hereinafter referred as "Director"), began to subject the Plaintiff to a constant pattern of discriminatory and retaliatory adverse actions in order to harass the Plaintiff.  The Director began to discriminate the Plaintiff because of her association to her disabled relative. This action is a direct violation of the Americans with Disabilities Act (hereinafter referred as "ADA"). In addition, the Director retaliated against the Plaintiff for participating in a protected activity, which was her reasonable accommodation request pursuant to the Family and Medical Leave Act (hereinafter referred as "FMLA"). Because of the Director's continued harassment against the Plaintiff, the Plaintiff's work environment has become intolerable and hostile, leading the Plaintiff to seek treatment for her mental stress and depression. The Director continues to create a hostile work environment for the Plaintiff, not just by her own orders, but by delegating other orders to other employees so as to subject the Plaintiff to other types of harassment,

harassment which is not being implemented to other employees in the same position. These retaliatory and discriminatory actions continue to this day.

2.      Such actions constitute a disparate treatment by the Defendants based on (1) discrimination for associating with a person with a disability pursuant to ADA and (2) retaliation for participating in a protected activity pursuant to the FMLA, causing damages to the Plaintiff.

3.      Plaintiff files this civil action against the Commonwealth, the DOLPR, Mr. Vance H. Thomas-Rider, the Director and Mrs. Nilma Maldonado-Colon (hereinafter referred to as "Defendants"), based on the following: Discrimination based on Disability pursuant to the Americans with Disabilities Act, 42 USC sec. 12101 *et seq.*, and Puerto Rico's Law No. 44 of July 2, 1985, 1 LPRA sec. 501 *et seq.*; Retaliation pursuant to the Family and Medical Leave Act, 29 U.S.C. 2615 and 29 C.F.R. sec. 825.220, Title VII of the Civil Rights Act, 42 USC sec. 2000e-3(a), American with Disabilities Act, 42 USC sec. 12203, Puerto Rico's Law No. 115 of December 20, 1991, 29 LPRA sec. 194 et seq. and Section 16 of Article II of Constitution of the Commonwealth of Puerto Rico; and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

4.      Plaintiff seeks compensatory, punitive, double and liquidated damages, back pay, front pay, and equitable and injunctive relief for Defendants' unlawful discriminatory and retaliatory adverse actions against the Plaintiff, based on her retaliation and discrimination claims. In addition, Plaintiff seeks other specific remedies that restore her to the position that she would have held in the absence of the retaliation and discrimination.

**JURISDICTION AND VENUE**

5.      The United States District Court for the District of Puerto Rico has jurisdiction over this action under 28 U.S.C. sec. 1331 since the matter of this civil action arises under the Constitution, laws, or treaties of the United States. Specifically, Plaintiff files this action pursuant to the Americans with Disabilities Act, Family Medical Leave Act and Title VII of the Civil Rights Act.

6.      Plaintiff further invokes pendent or supplemental jurisdiction of this Court under 28 USC sec. 1367 to hear Puerto Rico constitutional and law claims arising from the same nucleus of operative facts. Specifically, Plaintiff files this action pursuant to Section 16 of Article II of the Constitution of the Commonwealth of Puerto Rico; P.R. Law No. 44 of July 2, 1985, 1 LPRA sec. 501 *et seq.*; P.R. Law 115 of December 20, 1991, 29 LPRA sec. 194 *et seq.;* and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

7.      Pursuant to 28 U.S.C. sec. 1391 (a), venue is proper in the District of Puerto Rico because the events that justify the causes of action occurred in this district and the Defendants reside within this judicial district.

8.      Before filing this instant case, Plaintiff filed timely charges of retaliation and of discrimination on the basis of disability before the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") within one hundred and eighty (180) days and/or three hundred (300) days after the adverse employment action. Notice of Right to Sue from the EEOC was received by the Plaintiff. Plaintiff thus filed this timely Complaint within ninety (90) days of receipt of the EEOC's Notification of Right to Sue.

9.      Plaintiff demands that all causes of action be tried before a jury.

**PARTIES**

10.     Plaintiff, Bethzaida Ramos-Ortiz is of legal age, domiciled and resident of Cabo Rojo, Puerto Rico.   Plaintiff's physical and postal address is 3248 Calle Alpes, Urbanización Montesol, Cabo Rojo, PR 00623.

11.     Defendant, Commonwealth of Puerto Rico is a Commonwealth organized and existing under the constitution and laws of the Commonwealth of Puerto Rico and of the United States of America.  Commonwealth is being brought in this case because it is the real party of interest, due to the fact that the Department of Labor & Human Resources of the Commonwealth of Puerto Rico is an agency of the Commonwealth.

12.     Co-Defendant, Department of Labor & Human Resources of the Commonwealth of Puerto Rico (hereinafter referred as "DOLPR") is an authority and/or agency and/or a public or quasi public corporation by virtue of the Enabling Act number 15 of April 14, 1931, as amended, with sufficient authority to sue and be sued.  DOLPR is dedicated to foster, promote, and develop the welfare of the workers of Puerto Rico; improve working conditions; advance opportunities for profitable employment; and assure work-related benefits and rights. DOLPR's address is Ave. Luis Munoz Rivera 505, Edificio Prudencio Rivera-Martinez, Hato Rey, PR 00918.

13.     Co-Defendant, Mr. Vance H. Thomas-Rider is the Secretary of the DOLPR (hereinafter referred as "Mr. Thomas" and/or "DOLPR Secretary"). Mr. Thomas is being brought before this Honorable Court in his personal capacity and official capacity as Secretary of the DOLPR. His current personal address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered. However his current

business address is Ave. Luis Munoz Rivera 505, Edificio Prudencio Rivera-Martinez, Hato Rey, PR 00918.

14.     Co-Defendant, Mrs. Myriam L. Costa-Malaret is the Director of the Anti-Discrimination Unit of the DOLPR (hereinafter referred as "Mrs. Costa" and/or "Director"). Mrs. Costa is being brought before this Honorable Court in her personal capacity and official capacity as Director of the Anti-Discrimination Unit of the DOLPR. Her current personal address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered. However her current business address is Ave. Luis Munoz Rivera 505, Edificio Prudencio Rivera-Martinez, Hato Rey, PR 00918.

15.     Co-Defendant, Mr. Nilma Maldonado-Colon is the Director of Human Resources of the DOLPR (hereinafter referred as "Mrs. Maldonado" and/or "HR Director"). Mrs. Maldonado is being brought before this Honorable Court in her personal capacity and official capacity as Director of the Human Resources of the DOLPR. Her current personal address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered. However her current business address is Ave. Luis Munoz Rivera 505, Edificio Prudencio Rivera-Martinez, Hato Rey, PR 00918.

16.     Co-Defendant, Insurance Company XYZ (hereinafter referred to as "Insurance Company XYZ"), held an insurance policy in favor of the Defendants. At the time of the retaliatory and discriminatory incidents described herein, Insurance Company XYZ held an insurance policy in favor of the Defendants', specifically to cover said retaliation and discrimination claims. Their current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

17.     Co-Defendant, Company ABC (hereinafter referred to as "Company ABC"), is another business company, which is the parent company or an affiliated company of the Defendants, that directed and had knowledge of Defendants' discriminatory acts of which Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

18.     Co-Defendant, John & Jane Doe (hereinafter referred to as "Doe"), is another agent, supervisor, official or director who is affiliated with the Defendants, who directed and had knowledge of Defendants' discriminatory acts of which Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

**THE FACTS**

19.     Plaintiff works for DOLPR since June 2nd, 1989.

20.     DOLPR is dedicated to foster, promote, and develop the welfare of the workers of Puerto Rico; improve working conditions; advance opportunities for profitable employment; and assure work-related benefits and rights.

21.     Plaintiff worked in the Anti-Discrimination Unit in the San Juan offices of DOLPR from June 1989 until January 2002.

22.     Plaintiff's current job position is titled as Claims Investigator II for the Anti-Discrimination Unit. Plaintiff's functions as Claims Investigator II range from receiving Charges of Discrimination, orient the public as to state and federal anti-discrimination statutes, give seminars and/or conferences to various entities, including employers and employees, investigate the Charges of Discrimination, prepare the Agency Determinations of the Charges of Discrimination, and other matters.

23.     On February 2002, DOLPR took the initiative to open their first regional office for the Anti-Discrimination Unit outside the metropolitan area. Specifically, the DOLPR opened their first regional office for the Anti-Discrimination unit in Mayaguez.

24.     The Director of the Anti-Discrimination Unit on February 2002, handpicked the Plaintiff to begin working in the new Anti-Discrimination Unit office located in Mayaguez, Puerto Rico.

25.     The Plaintiff, who initially was living in Guaynabo, PR, then had to move to Cabo Rojo in order to be closer to her new designated office.

26.     During the Plaintiff's twenty four (24) years as an employee of the DOLPR, Plaintiff was a model employee and her personal employee file was absent of any type of warnings. In addition, during her years working for the DOLPR, the Plaintiff received recognitions for her participation in various seminars to orient employers as to the different state and federal statutes concerning employment law.

27.     Plaintiff has a sibling that is disabled. Specifically, the Plaintiff's Brother suffers severe mental retardation. Plaintiff's Brother has been suffering from this disability since his birth on October 21, 1960.

28.     Plaintiff's Brother was originally taken care of by Plaintiff's Mother for the span of most of his life. Essentially, the Plaintiff's mother dedicated all her life for the care of Plaintiff's Brother.

29.     Plaintiff's mother began to suffer symptoms related to Parkinson's and Alzheimer's disease, which began to severely impair her ability in being able to take care of Plaintiff's Brother. Essentially, the Plaintiff had to begin to assume her mother's responsibilities in taking care of the Plaintiff's Brother.

30.     The Plaintiff's mother had to be placed in an Elderly Care facility so as to assist her with her debilitating condition.

31.     As a result of the Plaintiff's mother relocation, and her continuous debilitating condition, on February 2013, the Plaintiff's Brother moved with the Plaintiff in her home in Cabo Rojo, so that the Plaintiff could be able to take care of him full-time.

32.     On April 23rd, 2013, the Plaintiff filed two Petitions before the Puerto Rico State Courts. The first Petition was to request the Court to legally declare the Plaintiff's Brother mentally incapacitated and appoint the Plaintiff as the Legal Guardian and/or Legal Ward of the Plaintiff's Brother. This Petition is under the case heading of *Bethzaida Ramos-Ortiz v. Manuel Ramos-Ortiz*, Civil Case Num. DNT2013-0004. The second Petition was to request the Court to order that the Department of Health of the Commonwealth of Puerto Rico (hereinafter referred as "DOH") assume the duties of care of the Plaintiff's Brother. This second Petition is under the case heading of *Bethzaida Ramos-Ortiz v. Manuel Ramos-Ortiz*, Civil Case Num. QEA2013-39. The Puerto Rico State Courts issued various judgments in which it Granted Plaintiff's requests. The State Courts issued the following judgments:  1) it declared Plaintiff's Brother Legally Incapacitated, 2) it appointed the Plaintiff as the Legal Guardian of the Plaintiff's Brother, and 3) it ordered the DOH to place the Plaintiff's brother in a government facility in order to take care of the Disabled Relative.

33.     Although the Plaintiff was successful in legally declaring her Disabled Relative incapacitated and was appointed as his legal guardian, the DOH did not comply with the Court Order in the second case of *Bethzaida Ramos-Ortiz v. Manuel Ramos-Ortiz*, Civil Case Num. QEA2013-39. The Puerto Rico State Court issued four consecutive orders to the DOH, ordering the DOH to place the Plaintiff's Brother in the corresponding

governmental facilities for the purpose of assisting him in his needs. Unfortunately, the DOH never complied with the Court Orders.

34.     Due to the DOH's inaction, the Plaintiff's Brother continued to live with the Plaintiff.

35.     As a result of the Plaintiff's full-time care of her Disabled Relative, she found herself having difficulty arriving to her work on time. Specifically, the Plaintiff's Brother's condition is so severe that the Plaintiff must assist him with all of his basic vital functional day to day activities. As a form of examples, the Plaintiff must assist her Disabled Relative for all types of activities which includes, preparing meals for the Plaintiff's Brother, feeding the Plaintiff's Brother, bathing the Plaintiff's Brother, grooming the Plaintiff's Brother, clothing the Plaintiff's Brother, assisting with the consumption of Plaintiff's Brother's medicine, taking the Plaintiff's Brother for medical treatment, and other life activies. Essentially, the Plaintiff's Brother has been categorized to have the mental capacity between an eighteen month to a 24 month infant.

36.     Since the Plaintiff's Brother moved with the Plaintiff in 2013, her life has completely changed in a way that she knew that it would affect her employment schedule.

37.     Because the Plaintiff's request to the Court to order the DOH to assume responsibilities of the Plaintiff's Brother was fruitless, the Plaintiff in good faith tried to manage her duties as Claims Investigator and Legal Guardian to the best of her ability.

38.     Due to the Plaintiff's constant care of her brother, she arrived at the Mayaguez Office past her regular work schedule start at 8:00 am. Plaintiff normally arrived between 8:30 to 9:30 am.

39.   When the Plaintiff arrived at whichever hour that day, the Plaintiff completed her full-time eight (8) hour work schedule on that same date, past the regular five (5) o'clock end time. Thus, the Plaintiff regularly clocked out at around 5:30 to 6:30 pm.

40.   During this time, the Plaintiff was never admonished for this practice.

41.   In fact, during the Plaintiff's approximate 24 years working with the Defendants, she had never received any disciplinary admonishment.

42.   Due to the fact that the Plaintiff understood that she needed reasonable accommodations in order to properly assist her Disabled Relative and provide the adequate work needed at the office, the Plaintiff sent a communication to the Director and the HR Director on September 30th, 2013. In said communication, the Plaintiff requested the Director and the HR Director to provide a reasonable accommodation to the Plaintiff so that the Plaintiff could modify her work schedule to start after 8:30 am or other alternatives.

43.   This was when the Director was notified for the first time of the Plaintiff's situation with her Disabled Brother.

44.   Immediately after being notified of the Plaintiff's situation with her Disabled Brother, the Director arbitrarily ordered an employee to admonish the Plaintiff and issue an order to the Plaintiff to finish her work on specific cases at specific due date times. This order was issued approximately on October 8th, 2013.

45.   This order took the Plaintiff by surprise, especially due to the fact that no employee in the Anti-Discrimination unit had received such an order before. This was the first unequal treatment demonstrated by the Director, after she was notified of Plaintiff's reasonable accommodation request due to her association with a disabled person.

46.    On October 24th, 2013, the Plaintiff received a communication from the HR Director in which she responded to Plaintiff's reasonable accommodation request. In said communication, the HR Director stated that she consulted with the Director with regards to the change of work schedule hours. Although the Director approved the change of work schedule hours, she limited said change to one month, between November 1st to November 29th of 2013. In addition, the Director indicated to the Plaintiff that this one month change should be sufficient time to resolve "her personal problems".

47.    Notwithstanding the approval of the reasonable accommodations of one month, the Director continued to harass the Plaintiff, admonishing the Plaintiff, knowing that the Plaintiff had been approved reasonable accommodation in order to assist her with her Disabled Relative situation.

48.    The Plaintiff requested that her reasonable accommodations be extended. However, the Director ignored Plaintiff's request and continued to admonish the Plaintiff, knowing of the situation concerning the Disabled Relative.

49.    The Director continued to admonish the Plaintiff unnecessarily during the last months of 2013, with clear disregard to her reasonable accommodations requests and the reality that the Plaintiff had a situation with a Disabled Relative.

50.    During December 2013, the Director appeared in a radio interview to discuss workplace sexual harassment. In said radio interview, which had nothing to do with the Plaintiff's work, the Director began to falsely allege that the services in the Mayaguez Anti-Discrimination office were being affected by the Plaintiff's work hour schedule, falsely alleging that citizens had been complaining about the Plaintiff's late entrance.

51.     During the course of 24 years that the Plaintiff worked in the Anti-Discrimination office, and during her tenure in the Mayaguez Office, the Plaintiff has never received any complaint from any citizen who sought services at said office.

52.     However, the Director falsely alleged in the radio station that she received complaints concerning the Plaintiff, when the reality was that the no one had complained about the Plaintiff. This was another discriminatory action in order to affect the image and reputation of the Plaintiff.

53.     The day after the radio station broadcast, an unknown person called the offices to complain about the Plaintiff. The Plaintiff tried to call the unknown person back, and did not get a response. The unknown person complained to the Director.

54.     It was later discovered that the person who allegedly "complained" about the Plaintiff was the Radio Station Reporter who was interviewing the Director the day before on December 2013, who is in fact a friend of the Director throughout social media.

55.     This demonstrates that the Director has gone at length to fabricate false complaints against the Plaintiff because of her association to a disabled person.

56.     The Director used this false information to admonish the Plaintiff again, stating that some "citizen" had complained about the Plaintiff because she was not available to answer his phone call.

57.     The Defendants on February 2014 sent a communication to the Plaintiff denying her reasonable accommodation extension which was requested approximately four months before. The Defendants falsely alleged that the Plaintiff did not comply with the reasonable accommodation.

58.     Plaintiff requested the assistance of the Sub-Secretary of the DOLPR, in order to assist her with her situation, due to the fact that the Director and HR Director continued their pattern of harassment, admonishing the Plaintiff for unjust reasons.

59.     After Plaintiff requested the assistance of the Sub-Secretary of the DOLPR, the Defendants sent a communication on March 2014, granting Plaintiff's reasonable accommodation for a period of one month.

60.     The Director of the Plaintiff however, continued admonishing the Plaintiff for unjust reasons, disregarding the fact that the Plaintiff had a situation concerning her Disabled Relative. Thus, the Director continued her discriminatory actions against the Plaintiff for her association with a disabled person.

61.     Because of the Director's discriminatory admonishments to the Plaintiff, the Plaintiff decided to request the assistance of Mr. Thomas on June 2014. Specifically, the Plaintiff requested that Mr. Thomas assist her with her situation concerning her Disabled Relative and that he take remedial action against the Director so that she would cease and desist her discriminatory actions against the Plaintiff.

62.     The Plaintiff's letter to Mr. Thomas was also sent to the Governor of the Commonwealth of Puerto Rico.

63.     Unfortunately, Mr. Thomas did not take any remedial action concerning the Plaintiff's request for assistance.

64.     The Director continued her pattern of discriminatory actions, admonishing the Plaintiff.

65.     Because of Mr. Thomas' inaction concerning the Plaintiff's discrimination complaint on June 2014, the Plaintiff filed an EEOC Charge of Discrimination on July 21st, 2014.

66.     Notwithstanding the Director's discriminatory actions, the Plaintiff in good faith communicated with the Director and the HR Director to request a reasonable accommodation pursuant to the FMLA on August 2014.

67.     The Defendants arbitrarily denied the Plaintiff's FMLA Leave of Absence on September 2014.

68.     The Director continued discriminatorily admonishing the Plaintiff throughout September. In fact, the Director made a phone call to the Plaintiff where she screamed throughout the whole conversation, lying and indicating to the Plaintiff that she had no idea what the Plaintiff was talking about and that the Plaintiff should stop doing whatever she was doing.

69.     These before mentioned threats by the Director during the phone conversation was a discriminatory and retaliatory action taken against the Plaintiff after the Plaintiff had filed her EEOC Charge of Discrimination and requested the FMLA Leave of Absence, federally protected rights that the Plaintiff had exercised.

70.     The Mayaguez office performance was never negatively affected due to the Plaintiff's late arrival, and all the work in the office was done accordingly. Specifically, the public was always assisted by the Plaintiff and no complaint was ever really lodged.

71.     The Director continued her pattern of discriminatory harassment against the Plaintiff throughout the year of 2014, something that the Plaintiff had never suffered before until she had notified the Director of her association with a disabled person.

72.     The Director continued her pattern of retaliatory harassment against the Plaintiff throughout the year of 2014, due to the Plaintiff's Charge of Discrimination, something that the Plaintiff would not have suffered until after she had notified the Director of her Charge of Discrimination.

73.     The Director continued her pattern of retaliatory harassment against the Plaintiff throughout the year of 2014, due to the Plaintiff's request under FMLA accommodation, something that the Plaintiff would not have suffered until after she had notified the Director of her request for FMLA reasonable accommodation due to her care of her Disabled Relative.

74.     The Director continued harassing the Plaintiff due to Discrimination and Retaliation, until the Plaintiff was notified that she will be suspended from her work on October 2014.

75.     The Plaintiff amended her Charge of Discrimination after her unjust suspension, due to the fact that the Defendants had discriminated and retaliated against the Plaintiff because of her association with a disabled relative and participating in a protected activity under the FMLA.

76.     In addition to the admonishments, the Defendants began to affect the Plaintiff's salary, greatly reducing her salary unjustly.

77.     This reduction of salary is a discriminatory and retaliatory action taken against the Plaintiff, because of her association with a disabled relative and participating in a protected activity under the FMLA.

78.     Because the Plaintiff's reasonable accommodation requests under the FMLA were arbitrarily denied, the Plaintiff had to use her other fringe benefits and leaves in order

to assist her Disabled Relative. This would not have occurred if the Defendants had respected the Plaintiff's rights and provided the reasonable accommodations that the FMLA provides.

79. Because of the pattern of discriminatory and retaliatory actions taken against the Plaintiff by the Director, the Plaintiff began to seek medical treatment for her emotional suffering at the hands of the Director.

80. Her treating physician understood that the Plaintiff was seriously affected because of the adverse employment situations created by the Defendants. Therefore, the physician recommended that the Defendant provide a reasonable accommodation to the Plaintiff because of the effects of her newly prescribed pharmaceutical medication.

81. On December, 2015, the Plaintiff requested reasonable accommodations with accordance to her physician's recommendations.

82. The Defendants denied arbitrarily the Plaintiff's reasonable accommodations request.

83. Finally, the Defendants' also notified the Plaintiff that they are intending to terminate the Plaintiff, based on the false allegations raised by the Director, indicating that the Plaintiff is not providing any service to the public at the Mayaguez office.

84. Over the course of Plaintiff's twenty four (24) years of employment with the Defendants, the Plaintiff was never reprimanded until after she notified the Director of her relationship with a Disabled Relative.

85. Plaintiff always fulfilled and excelled at her duties.

86. Based on the before mentioned facts, the Director has incurred in retaliatory and discriminatory actions against the Plaintiff.

87.     The Director is an agent who is duly authorized by the Defendants, who committed and/or cooperated with the retaliatory and discriminatory acts in the course and scope of her agency relationship, thus imposing liability to the Defendants.

88.     The DOLPR Secretary is an agent who is duly authorized by the Defendants, who committed and/or cooperated with the retaliatory and discriminatory acts in the course and scope of her agency relationship, thus imposing liability to the Defendants.

89.     The HR Director is an agent who is duly authorized by the Defendants, who committed and/or cooperated with the retaliatory and discriminatory acts in the course and scope of her agency relationship, thus imposing liability to the Defendants.

90.     The Defendants had knowledge of the Director's retaliatory and discriminatory decisions. The Defendants did not take any proper action to rectify and/or avoid the retaliatory and discriminatory actions incurred by the Director. The Defendants allowed the Director to retaliate and discriminate against the Plaintiff by suspending the Plaintiff because of her association to a disabled person and because she had participated in protected activities, basing her decision on false pretextual grounds.

91.     The Defendants had knowledge of the DOLPR Secretary's retaliatory and discriminatory decisions. The Defendants did not take any proper action to rectify and/or avoid the retaliatory and discriminatory actions incurred by the DOLPR Secretary. The Defendants allowed the DOLPR Secretary to retaliate and discriminate against the Plaintiff by suspending the Plaintiff because of her association to a disabled person and because she had participated in protected activities, basing her decision on false pretextual grounds.

92.     The Defendants had knowledge of the HR Director's retaliatory and discriminatory decisions. The Defendants did not take any proper action to rectify and/or

avoid the retaliatory and discriminatory actions incurred by the HR Director. The Defendants allowed the HR Director to retaliate and discriminate against the Plaintiff by suspending the Plaintiff because of her association to a disabled person and because she had participated in protected activities, basing her decision on false pretextual grounds.

93.     Company ABC was the parent company or an affiliated company of the Defendants. Company ABC had knowledge of the Director, DOLPR Secretary and HR Director's retaliatory and discriminatory decisions. Company ABC did not take any proper action to rectify and/or avoid the retaliatory and discriminatory actions incurred by the Director, DOLPR Secretary and HR Director. Company ABC allowed the Director, DOLPR Secretary and HR Director to retaliate and discriminate against the Plaintiff by firing the Plaintiff because of her association to a disabled person and because she had participated in protected activities, basing their decision on false pretextual grounds.

94.     John & Jane Doe had knowledge of the Director, DOLPR Secretary and HR Director's retaliatory and discriminatory decisions. John & Jane Doe did not take any proper action to rectify and/or avoid the retaliatory and discriminatory actions incurred by the Director, DOLPR Secretary and HR Director. John & Jane Doe allowed the Director, DOLPR Secretary and HR Director to retaliate and discriminate against the Plaintiff by firing the Plaintiff because of her association to a disabled person and because she had participated in protected activities, basing their decision on false pretextual grounds.

95.     At the time of these discriminatory incidents, Insurance Company XYZ held an insurance policy in favor of the Defendants, specifically to cover said discriminatory claims. Said insurance policy was in force at the time of the discriminatory incidents.

96. Ever since Plaintiff was suspended, Plaintiff has suffered economic losses and deprivation of her salary. Plaintiff has lost sleep and rest, felt humiliated and discriminated, and has been at loss of her peace of mind and emotional stability.

97. Presently, Plaintiff is being medically treated for severe depression and mental anguish, being prescribed several medicines to treat the same.

98. As up to this date, Plaintiff has been put on notice by the Defendants that they are falsely alleging that she will be fired from her job.

99. The Defendants are liable for all the Plaintiff's damages.

**FIRST CAUSE OF ACTION**

**RETALIATION**

100. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

101. Defendants' retaliatory conduct altered Plaintiff's employment condition because Plaintiff engaged in a protected activity.

102. Specifically, Plaintiff was engaging in a protected activity by exercising her right to take a leave of absence pursuant to the FMLA. Additionally, Plaintiff participated in a protected activity by exercising her right to file a Charge of Discrimination before the EEOC.

103. The Director took a materially adverse action against the Plaintiff, by making up and unreasonably implementing disciplinary actions against the Plaintiff because the Plaintiff was participating in a protected activity that is, requesting an FMLA accommodation and filing a Charge of Discrimination.

104.   The Director's adverse actions are causally connected with the Plaintiff's participation in a protected activity.

105.   The Director's disciplinary actions, which stated that Plaintiff was incompetent and failed to perform her job correctly, were a pretextual ground for illegally terminating the Plaintiff.

106.   The Plaintiff suffered a materially adverse action from the Director's arbitrary decisions, because the Director unjustly disciplined and eventually suspended the Plaintiff, because the Plaintiff engaged in two protected activities: exercising her right to request an FMLA reasonable accommodation and exercising her right to file a Charge of Discrimination before the EEOC.

107.   Plaintiff worked as a Claims Investigator for the Anti-Discrimination for approximately twenty (24) years without any problems, until the she notified the Director of her association with her Disabled Relative.

108.   All the named Defendants, Company ABC, John & Jane Doe had knowledge of the Director's unlawful retaliation against the Plaintiff. Therefore, the named Defendants, Company ABC, John & Jane Doe are liable because of the unlawful retaliation against the Plaintiff.

109.   The Plaintiff's participation in protected activity was the direct cause of the Director's adverse action of admonishing, suspending and now in the process of terminating the Plaintiff, thus constituting an unlawful retaliation.

110.   Defendants' conduct against the Plaintiff constitutes an unlawful retaliation pursuant to the Family and Medical Leave Act, 29 U.S.C. 2615 and 29 C.F.R. sec. 825.220,

Title VII of the Civil Rights Act, 42 USC sec. 2000e-3(a), Puerto Rico's Law No. 115 and Section 16 of Article II of the Constitution of the Commonwealth of Puerto Rico.

111.    As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered intensely, has been deprived of her means of livelihood, has suffered economic losses and has been emotionally injured.

112.    As a result of Defendants' unlawful retaliation, Plaintiff lost the salary she was entitled to.

113.    Defendants' are liable to Plaintiff for the back pay she was entitled had she maintained her position pursuant to Section 706 (g) of Title VII of the Civil Rights Act, 42 USC. Sec. 2000e-5(g).

114.    Plaintiffs' last annual salary was approximately $40,500.00.

115.    Defendants' are liable to the Plaintiff under this cause of action for all lost wages and fringe benefits that the Plaintiff has incurred from the date of the adverse employment action to the date on which damages are settled. Such back pay should include lost wages, pension benefits, insurance, vacation, profit sharing, accrued sick leave and other economic benefits of employment, plus prejudgment interest.

116.    Pursuant to the FMLA and Title VII of the Civil Rights Act, Defendants' unlawful retaliation against the Plaintiff was willful, malicious and/or carried with reckless indifference towards Plaintiffs' rights protected under federal law. Plaintiff is thus entitled to punitive damages. This amount continues to increase with the passage of time and will be adjusted accordingly at the time of the trial.

117.    In the alternative, an adequate remedy under PR Law No. 115, Defendants' are liable to Plaintiff for double the amount of back pay, front pay and compensatory

damages, without the need of establishing that there was a willful, malicious and/or reckless indifference towards Plaintiffs' rights.

118.    Defendants' are liable to Plaintiff under this cause of action, pursuant to Title VII of the Civil Rights Act, PR Law 115 and the Constitution of the Commonwealth of Puerto Rico, in excess of two million five hundred thousand dollars ($2,500,000.00).

119.    In addition, Plaintiff is entitled to reinstatement and to an order forbidding any further discriminatory practices against her.

120.    In addition to the remedies before mentioned, Plaintiff is entitled to double compensatory and statutory damages. As a result thereof, Defendants' are liable for double compensatory and statutory damages. These damages are estimated at no less than two million five hundred thousand dollars ($2,500,000.00), which times two equal five million dollars ($5,000,000.00).

**SECOND CAUSE OF ACTION**

**DISCRIMINATION BASED ON ASSOCIATION WITH DISABILITY**

121.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

122.    Defendants' discriminatory conduct altered Plaintiff's employment condition because of Plaintiff's association with a disabled person.

123.    At the moment that the Defendants' incurred in the discriminatory conduct, the Plaintiff was performing her job well enough to meet the Defendants' legitimate expectations.

124.    Defendants' conduct against the Plaintiff constitutes discrimination based on association with a disabled person pursuant to Title VII of the Civil Rights Act of 1964, 42

USC sec. 2000e-2(a), Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq.,* and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico.

125.    As a proximate result of Defendants' discriminatory practice, Plaintiff has suffered intensely, has been deprived of her means of livelihood, has suffered economic losses and has been emotionally injured.

126.    As a result of Defendants' discriminatory practices, Plaintiff lost the salary she was entitled to.

127.    Defendants' are liable to Plaintiff for the back pay she was entitled had she maintained her position pursuant to Section 706 (g) of Title VII of the Civil Rights Act, 42 USC. Sec. 2000e-5(g).

128.    Plaintiffs' last annual salary was approximately $40,500.00

129.    Defendants' are liable to the Plaintiff under this cause of action for all lost wages and fringe benefits that the Plaintiff has incurred from the date of the adverse employment action to the date on which damages are settled. Such back pay should include lost wages, pension benefits, insurance, vacation, profit sharing, accrued sick leave and other economic benefits of employment, plus prejudgment interest.

130.    Pursuant to Title VII of the Civil Rights Act, Defendants' discriminatory practices against the Plaintiff were willful, malicious and/or carried with reckless indifference towards Plaintiffs' rights protected under federal law. Plaintiff is thus entitled to punitive damages. This amount continues to increase with the passage of time and will be adjusted accordingly at the time of the trial.

131.    In the alternative, an adequate remedy under PR Law No. 100, Defendants' are liable to Plaintiff for double the amount of back pay, front pay and compensatory

damages, without the need of establishing that there was a willful, malicious and/or reckless indifference towards Plaintiffs' rights.

132.   Plaintiff's pending dismissal was the culmination of Defendants' discriminatory practice against the Plaintiff because of her association with a disabled person.

133.   Defendants' are liable to Plaintiff under this cause of action, pursuant to Title VII of the Civil Rights Act of 1964, PR Law 100, and the Constitution of the Commonwealth of Puerto Rico, in excess of two million five hundred thousand dollars ($2,500,000.00).

134.   In addition, Plaintiff is entitled to reinstatement and to an order forbidding any further discriminatory practices against her.

135.   In addition to the remedies before mentioned, Plaintiff is entitled to double compensatory and statutory damages. As a result thereof, Defendants' are liable for double compensatory and statutory damages. These damages are estimated at no less than two million five hundred thousand dollars ($2,500,000.00), which times two equal five million dollars ($5,000,000.00).

### THIRD CAUSE OF ACTION

### TORTS DAMAGES

136.   Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

137.   Defendants' actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

138.   Defendants are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

139.   The Director's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

140.   The Director is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

141.   The DOLPR Secretary's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

142.   The DOLPR Secretary is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

143.   The HR Director's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

144.   The HR Director is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

145.   John & Jane Doe's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

146.   John & Jane Doe's are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

147.   Company ABC's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

148.   Company ABC is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

149.   The Director's actions as officer and/or employee of the Defendants' constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

150.    The DOLPR Secretary's actions as officer and/or employee of the Defendants' constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

151.    The HR Director's actions as officer and/or employee of the Defendants' constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

152.    Therefore, Defendants' are vicariously liable for damages caused by their officers and/or employees in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

153.    Defendants' actions as subsidiary company of Company ABC constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

154.    Therefore, Company ABC is vicariously liable for damages caused by the Defendants' in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

155.    All before mentioned Defendants are jointly and severally liable for their negligent and intentional tort actions.

156.    As a result thereof, Defendants' are liable for compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141, 5142. These damages are estimated at no less than five hundred thousand dollars ($500,000.00).

**FIFTH CAUSE OF ACTION**

**INSURANCE COMPANIES ARE JOINTLY AND SEVERALLY LIABLE**

157.   Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

158.   Insurance Company XYZ is directly, jointly and severally liable, along with the other Co-defendants to the Plaintiff for the damages caused by their insured, pursuant to the terms and coverage of their respective policy of insurance.

**SIXTH CAUSE OF ACTION**

**ATTORNEYS FEES AND PREJUDGMENT INTEREST**

159.   Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

160.   Defendants' are liable to Plaintiff for attorney's fees and costs under Title VII, 42 U.S.C. sec. 2000e-5(k) and 42 USC sec. 1988.

161.   Defendants' are also liable to Plaintiff for attorney's fees under PR Law 100.

162.   Defendants' are liable for prejudgment interest pursuant to Rule 54 of the Federal Rules of Civil Procedure.

**DEMAND FOR JURY TRIAL**

163.    Plaintiff demand a trial by jury as to all claims and issues alleged herein

**PRAYER**

Wherefore, all allegations considered, Plaintiff prays that judgment be entered in their favor and against all Defendants', specifically:

1. Granting Plaintiff's Complaint against Defendants. This Court should grant Plaintiff's complaint and find that the Defendants are liable to the Plaintiff based

on the following: Discrimination based on association with a disabled person pursuant to Title VII of the Civil Rights Act of 1964, 42 USC sec. 2000e-2(a), Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq.* and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Retaliation pursuant to the Family and Medical Leave Act, 29 U.S.C. 2615 and 29 C.F.R. sec. 825.220, Title VII of the Civil Rights Act, 42 USC sec. 2000e-3(a), Puerto Rico's Law No. 115 of December 20, 1991, 29 LPRA sec. 194 *et seq.* and Section 16 of Article II of Constitution of the Commonwealth of Puerto Rico; and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

2. If the Plaintiff is terminated, during the pending litigation of this case, an order directing Defendants to reinstate Plaintiff to her former position and to cease and desist of any further discriminatory and retaliatory conduct on the basis of her association with a disabled person and request for FMLA.

3. Awarding plaintiff back pay, together with interest, for the period that Plaintiff was deprived of her salary, as it was awarded to other employees in her previous position.

4. Awarding Plaintiff punitive and liquidated damages equal to twice the back pay and fringe benefits lost by the Plaintiff.

5. Awarding Plaintiff lost benefits, both past and future.

6. Awarding Plaintiff the amounts before mentioned in the Complaint, including the double compensatory damages.

7. Awarding Plaintiff reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements.

8. Awarding Plaintiff any and all other relief to which Plaintiff may be justly entitled.

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico on this 19th day of July, 2016.

> ***S/VICTOR M. RIVERA-RIOS***
> VICTOR M. RIVERA-RIOS
> USDC BAR NUMBER 301202
> RIVERA COLÓN, RIVERA TORRES & RIOS BERLY, PSC
> 1502 FERNANDEZ JUNCOS AVE
> SAN JUAN, PR 00909
> Telephone: (787) 727-5710
> Facsimile: (787) 268-1835
> E-Mail: victorriverarios@rcrtrblaw.com